**POLO FASHIONS, INC., Plaintiff,**

v.

**EXTRA SPECIAL PRODUCTS, INC. and Lomar Enterprises, Inc., Defendants.**

**No. 77 Civ. 5023 (GLG).**

United States District Court,
S. D. New York.

May 3, 1978.

As Amended May 8, 1978.

Pennie & Edmonds, New York City, for defendants by George F. Long, III, Jonathan A. Marshall, Robert T. Scherer, New York City, of counsel.

## OPINION

GOETTEL, District Judge.

Plaintiff, Polo Fashions, Inc., ("Polo"), seeks to enjoin defendants, Lomar Enterprises, Inc. ("Lomar") and Extra Special Products, Inc. ("Extra Special")[1] from infringing plaintiff's trademarks.[*] The four causes of action stated in the complaint, falling within the broad generic categories of trademark infringement and unfair competition, are: (1) infringement of registered trademarks, 15 U.S.C. § 1114; (2) infringement of common law trademarks and unfair competition; (3) use of false designations of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a);[2] and (4) injury to business reputation and dilution of trademark under Section 368–d of the General Business Law of the State of New York.[3] In essence, plaintiff, which is identified with the famous fashion designer, Ralph Lauren, claims that defendants' successful marketing of several lines of men's wearing apparel stems from their use of trademarks confusingly similar to POLO, POLO FASHIONS, and POLO BY RALPH LAUREN, often in conjunction with a design of a polo player mounted on a horse (hereinafter "Polo Player symbol").

Argument of plaintiff's motion for a preliminary injunction was heard on November 23, 1977. Concluding that issues of fact

---

Amster & Rothstein, New York City, for plaintiff by Morton Amster, Roy H. Wepner, New York City, of counsel.

1. See Magistrate's Report for a description of defendants and their businesses. Louis Marks is the president and sole shareholder of Lomar. Extra Special acquired its interest in the infringing marks by a license from Lomar which was followed, after this suit was commenced, by an outright assignment.

* The trademarks in issue are reproduced in Appendix A.

2. This section provides a civil remedy to anyone "likely to be damaged" by another's use in connection with goods in commerce of a "false designation of origin."

3. Section 368–d provides:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

foreclosed immediate relief, the Court, by order of November 28, 1977, referred the matter, pursuant to 28 U.S.C. § 636(b)(1)(B), to a Magistrate to conduct an evidentiary hearing and to submit proposed findings of fact and conclusions of law. (A consent order, temporarily restraining defendants from certain conduct, pending determination of the motion for preliminary injunction, was thereafter entered.) The referral order outlined five primary areas of factual dispute which can be summarized as the likelihood of confusion between plaintiff's and defendants' marks, the rights of each to the marks and whether defendants were motivated by an intent to deceive.

Following a hearing, the Magistrate issued a report on February 24, 1978 recommending the issuance of a preliminary injunction. Defendants object to the report, emphasizing several purported omissions which, they contend, render the report inadequate to support a preliminary injunction and necessitate further hearings. Defendants point first to the Magistrate's failure to make specific findings of the prerequisites to preliminary relief, i. e., plaintiff's probable success on the merits and irreparable injury. Secondly, they claim the Magistrate failed to weigh the consequences of certain statements made by plaintiff in connection with its application to register its trademark, POLO BY RALPH LAUREN, and of a statement contained in its answer to a prior infringement suit brought by Brooks Brothers. Defendants also disagree generally with the Magistrate's primary conclusions that plaintiff had a protected trademark interest in the word "POLO" and that its rights in the mark were superior to those of defendants.

The Court concurs with the Magistrate's conclusion that plaintiff is entitled to a preliminary injunction under the circumstances disclosed by the hearing. Moreover, on the facts of this case, it appears to matter little under which legal theory plaintiff proceeds.

Trademark infringement has been described as just a part of the broader field of unfair competition with the essence of both claims being the likelihood that the infringing mark will cause confusion in the minds of the public. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962); *Stix Products, Inc. v. United Merchants & Mfrs.*, 295 F.Supp. 479, 493 & n. 15 (S.D.N.Y.1968). Thus, courts employ the same standards for determining the likelihood of confusion, regardless of the underlying theory of liability. *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 1294 & n. 8 (S.D.N.Y.1972).

The factors which should be weighed are the strength of the plaintiff's mark, the degree of similarity between both the marks and the products to which they are affixed, the competitive proximity of the products, the degree of care likely to be exercised by consumers, the presence of actual confusion and the motive of the alleged infringer in adopting the mark. *Helene Curtis Industries v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977); *Grotrian, Helfferich, Schulz v. Steinway & Sons*, 523 F.2d 1331 (2d Cir. 1975); *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 705 (2d Cir. 1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

A. *Strength of the Mark*

The Magistrate's report details the evidence supporting his conclusion that plaintiff's registered mark, POLO BY RALPH LAUREN, and its common law use of POLO, both alone and in connection with the Polo Player symbol, have acquired a secondary meaning with regard to all men's wearing apparel. Defendants have contended throughout the proceedings that POLO alone and in connection with the Polo Player symbol are inherently weak marks. They premise their arguments upon the fact that "polo" is a generic word denoting certain types of shirts and coats,[4]

---

4. A polo shirt is defined as "a close fitting pullover shirt for sportswear that is made of knitted cotton and has short or long sleeves and a turnover collar or a rounded banded neck."

Webster's Third New International Dictionary (1971).

while it may be used descriptively to indicate a specific style of shirt with a particular type of collar. Indeed, in an answer filed in the infringement action brought by Brooks Brothers, Polo Fashions averred that for these reasons "the word polo as applied to the genus of men's shirts is not susceptible of being a trademark for men's shirts." Defendants seek to further weaken plaintiff's mark by pointing to third party registrations containing the word "polo" either alone or in combination with other words or symbols. Again, this tactic was employed by Polo Fashions in the suit by Brooks Brothers.

Plaintiff responded that defendants raise only a straw issue by referring to the generic and descriptive functions of the word "polo," because defendants seek to use the words as trademarks, not descriptively. While Lomar may have used the word only on ties, Extra Special apparently intends to use it on diverse articles of men's wearing apparel, including "coordinating knits," which, plaintiff asserts, are not products which implicate either the generic or descriptive connotations of the word.

■ It may be useful, before proceeding further, to note that trademark law affords protection relative to a trademark's inherent "distinctiveness." In ascending order, the categories used are generic, descriptive, suggestive and arbitrary or fanciful. Generic words are words which identify the nature of the product. 1 Nims, *Unfair Competition & Trademarks* § 41 (1947). No matter how successfully a manufacturer promotes public identification of the word, it is incapable of attaining trademark status. *J. Kohnstam, Ltd. v. Louis Marx & Co.*, 280 F.2d 437 (Cust. & Pat.App. 1960). Descriptive words stand on a better footing in that they can become trademarks if they gain a secondary meaning. In contrast, suggestive and arbitrary or fanciful words do not require proof of secondary meaning before their trademark status will be protected.

■ As a final observation, a trademark may shift categories depending upon the product to which it is affixed. Applying these elementary principles, as they are explained in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976), it is clear that "polo" is generic to polo shirts and coats, descriptive as to other shirts and coats and fanciful as it is applied to other articles of wearing apparel. Thus, on the facts of this case, plaintiff's position is that the use of POLO on ties is fanciful. As to Extra Special's prospective use, it appears that the term is fanciful as to most of the items of sportswear but probably generic or descriptive of *some* of the "coordinating knit" shirts.

To the extent that the word is generic, an injunction can be tailored to protect defendants' right to use the word generically. To the extent that the word is descriptive, distinctions must be drawn as to the use to which defendants have put the word. If a competitor uses a descriptive word in its trademark sense as a " 'symbol to attract public attention' " and accomplishes its purpose by adopting the trademark holder's distinctive typestyle or emphasis upon the descriptive word, such use can be enjoined as trademark infringement or unfair competition. *Venetianaire Corp. of America v. A & P Import Co.*, 429 F.2d 1079 (2d Cir. 1970). Thus, while defendants should not be foreclosed from using POLO descriptively, their use of such marks as POLO BY MARCO POLO and POLO in conjunction with the Polo Player symbol using typestyle and label colors similar to plaintiff's distinctive materials, infringes plaintiff's subsisting rights in POLO BY RALPH LAUREN and POLO with the Polo Player symbol.

■ With regard to third party usage of similar marks on other products, the Court agrees with the Magistrate's conclusion that plaintiff's mark had not become weakened thereby since there was no evidence that the trademarks were well promoted by their holders. *Scarves By Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976). In contrast, the evidence revealed

that plaintiff's marks have been strengthened through their use and promotion by plaintiff. The Court will not give a reprise of the Magistrate's factual findings, supported by the record, which amply demonstrated that Polo Fashions, through its principal and designer Ralph Lauren, has become a nationally, perhaps internationally, known creator of men's fashions, with its marks receiving commensurate public recognition.[5] It is enough to note that Polo Fashions produces a wide variety of menswear, encourages the use of its marks in various ways in retail outlets, and licenses them to manufacturers of men's fashion accessories. Its wares are sold only in prestigious stores, in displays designed to attract, as one witness characterized it, the "carriage trade," with the result that its products sell as much for the aura of exclusivity they evoke, as for their intrinsic value. Substantial amounts spent in advertising are fortified by the attention given the designs in the media and the awards won by Lauren in the industry.

### B. *Similarity of Marks*

■ As to the similarity of the marks, with the exception of defendant Lomar's registered mark, MARCO POLO, the validity of which was challenged by plaintiff,[6] mere comparison reveals a very high degree of similarity. Defendant Lomar had adopted, as variations upon its registered mark, the marks POLO BY MARCO POLO and POLO. The POLO BY MARCO POLO and POLO marks are combined with a Polo Player symbol which is only slightly dissimilar from plaintiff's. (The former was the one chosen by defendant Extra Special to promote its upcoming line of sportswear.) All the marks exploit plaintiff's distinctive

POLO logo, with white lettering on a dark background. The POLO is in much larger type and dominates BY MARCO POLO. Some of defendants' knit shirts and ties have a Polo Player symbol embroidered in the same place that it appears on plaintiff's shirts and ties. In contrast, plaintiff does not use the Polo Player symbol on its POLO BY RALPH LAUREN label, although the Polo Player symbol is used on the RALPH LAUREN label placed on men's button down shirts and women's wear.

Because of the highly individualized nature of a finding on the similarity of two marks, resort to authority is not very helpful. *Mortellito v. Nina of California, supra* at 1294. It has been held that where a strong mark, such as plaintiff's is involved, the addition of a distinguishing phrase such as BY MARCO POLO is insufficient to eliminate the likelihood of confusion. *A. T. Cross Co. v. Jonathon Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir. 1972) ("La Crosse by Bradley" was confusingly similar to "Cross.") Moreover, infringement may occur even where plaintiff fails to establish that a portion of its registered mark has achieved separate trademark status, if the infringing mark evokes images connecting a defendant's products to plaintiff. Thus, trademark use of the word "Smog" infringed "London Fog" even though plaintiff could not show that the public used "Fog" as a nickname for plaintiff's products. *Londontown Manufacturing Co. v. Cable Raincoat Co.,* 371 F.Supp. 1114 (S.D.N.Y. 1974). Finally, in assessing whether the similarity of the marks is likely to cause confusion, the Court can weigh whether the *combination* of words, devices or symbols have been used to deceive the public into

---

**5.** Plaintiff presented evidence through affidavits by experts in the fashion industry that Lauren is recognized as a foremost designer. These experts were subjected to cross examination by defendants at their depositions. Such expert testimony may be considered. *Scarves By Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167 (2d Cir. 1976).

**6.** Substantial questions were raised as to Lomar's subsisting rights in Registration No. 348,-012 due to irregularities in obtaining renewals

and possible abandonment. The company which originally registered the mark in 1937, Well-Made Bloomer Co., Inc., of which Marks was secretary, was dissolved by Marks in 1944. Nevertheless, renewals were obtained after the dissolution by Marks acting as president (a position he had never held) with statements falsely portraying Well-Made as a presently existing corporation. Moreover, there was no corroborative evidence that this mark had been used since the mid-1950's.

believing that the goods of the infringer originated with the plaintiff. *Geisel v. Poynter Products, Inc.*, 283 F.Supp. 261 (S.D.N.Y.1968) (case arose under Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a)); *Helene Curtis Industries v. Church & Dwight*, 560 F.2d 1325 (7th Cir. 1977).

The use of an almost identical POLO logo, the dominance of POLO over BY RALPH LAUREN and BY MARCO POLO, the choice of similar label colors, the use of the Polo Player symbol on labels and embroidered on the finished products, tends to promote confusion of the marks.

As one of the objections to the Magistrate's report, defendants point to the failure *"to even mention the binding* consequences of plaintiff's *admission* to the United States Patent and Trademark Office, the guardian of the public interest," in its application to register the POLO BY RALPH LAUREN mark, that plaintiff's use of a distinctive POLO logo together with the words RALPH LAUREN would prevent confusion with a previously registered mark POLO used on woolen goods in the piece.

The Court finds this one of defendants' more specious arguments. Statements made during an *ex parte* prosecution before the United States Patent and Trademark Office seeking registration of a trademark do not circumscribe for all time the rights the registrant may acquire thereafter through extensive use. *Goodyear Tire & Rubber Co. v. A. J. Industries Corp.*, 165 U.S.P.Q. 665 (T.T.A.B.1970); *Eskimo Pie Corp. v. Canada Dry Corp., Inc.*, 181 U.S. P.Q. 191 (T.T.A.B.1973). This principle aside, plaintiff's statement could hardly be viewed as an admission that the use of POLO with the Polo Player symbol on goods *similar* to plaintiff's products would not be likely to cause confusion. Furthermore, the cases relied upon by defendant do not support its claim that this type of statement is afforded "conclusive" effect. In *Walgreen Drug Stores, Inc. v. Obear-Nester Glass Co.*, 113 F.2d 956 (8th Cir.), *cert. denied*, 311 U.S. 708, 61 S.Ct. 174, 85 L.Ed. 459 (1940), statements in an application limiting plaintiff's claim of intended exclusive use

were given conclusive effect. Similarly, in *Car-Freshner Corp. v. Marlen Products Co.*, 183 F.Supp. 20 (D.Md.1960), plaintiff was held to the description of the article in determining what had, in fact, been registered. Neither of these circumstances are similar to plaintiff's statement predicting what would, or would not, be likely to cause confusion.

## C. *Similarity of Products*

The impact of the similar marks is increased by the similarity of the products to which they are applied. Plaintiff produces a diverse line of men's wear which includes items comparable to the infringing products, ties and various articles of men's sportswear. The Magistrate found that while plaintiff's products tended to be highly priced and of superior materials, defendants' were not obviously inferior, thereby increasing the competitive proximity of the products. Plaintiff distributes its goods nationally so that whichever area defendants enter, plaintiff will have preceded them. On the closely related issue of the degree of care the consumer would be expected to exercise, it is apparent that purchases of clothing are routinely made which decreases the likelihood that the purchaser would linger over the decision.

## D. *Actual Confusion*

It follows naturally that the presence of actual confusion is perhaps the strongest evidence of the likelihood of confusion. *Helene Curtis Industries v. Church & Dwight Co., supra.* The Magistrate detailed instances where plaintiff's distributors inquired as to the existence of some connection between it and defendant. While this is not direct evidence of confusion among the purchasing public, it can support the inference that confusion also exists at that level. *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479 (S.D.N.Y.1968); *see Mortellito v. Nina of California, supra.* Moreover, there was evidence of actual palming off. Defendant Lomar sold ties bearing a label imprinted with POLO and the Polo Player symbol and

having a Polo Player embroidered on the front to a store called I. Rosen's in Memphis. The ties were "pre-ticketed" at $22.50, apparently to create the impression that this represented the normal retail price of the tie. Expert testimony, however, indicated that the quality of that particular tie would not command such a high retail price. Advertisements offered the ties at two for $25.00, claiming they regularly sold for $22.50. Plaintiff's customer in Memphis testified that he was told by his salesmen and customers that I. Rosen's had "polo" ties. When he went to I. Rosen's to investigate, the sales clerk told him that these ties were manufactured by Lauren. The tie he purchased was admitted into evidence and is strikingly similar to plaintiff's product, although they can be distinguished on close examination. The conclusion that actual confusion has been caused is inescapable.

### E. Intent

The last factor which the Magistrate assessed was the intent with which the defendants adopted the allegedly infringing marks. A necessary threshold determination was when defendants adopted the marks. While Lomar's evidence on the point was riddled with inconsistencies, the Magistrate accepted 1972, the date asserted by Lomar in its application to register POLO with the Polo Player symbol, as Lomar's first use of the trademark. Marks, the principal of Lomar, admitted that he was aware of plaintiff and its trademark at that time. After weighing the specific instance of palming off discussed above, the objective evidence stemming from the similarity of the marks and the logo and label colors, the Magistrate concluded that defendant Lomar acted with an intent to cause confusion. The Magistrate also found that while Extra Special knew confusion was likely, it acted in the good faith belief that Lomar held valid rights to the mark.

While a showing of intent is unnecessary to establish infringement, 2 Nims, *Unfair Competition & Trademark Infringement* § 348 (1947), it is relevant to both the likelihood of confusion and issues of damages. 4 Callmann, *Unfair Competition, Trademarks & Monopolies* § 89.2 (3d ed. 1970). Once the intent to cause confusion is established, the Court will presume that the infringer accomplished his purpose. The presumption is supported on the theory that the infringer, as an expert in the market he has chosen to enter, is correct in his assessment that public confusion will result. *Id.* § 82.2(b)(1). Here, there was sufficient evidence for the Magistrate to conclude that both defendants realized confusion was probable.[7]

Much of the foregoing would be irrelevant but for defendants' status as a "second comer" to the market with its consequent responsibility to avoid confusion. *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755 (2d Cir. 1960). To establish their primary rights to use POLO in connection with a Polo Player symbol, defendants rely upon Registration 348,012, filed in 1937 by a purported predecessor in interest of Lomar and renewed thereafter.[8] This mark has MARCO POLO written in dark script across a white background (the reverse of the colors used by plaintiff) on which appears a polo player symbol. A principle of trademark law, endorsed in *Ilco Corp. v. Ideal Security Hardware Corp.*, 527 F.2d 1221, 1224 (Cust. & Pat.App.1976) permits

> "a user who changes the *form* of its mark to retain the benefit of its earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression." (emphasis in original.)

Therefore, defendants' argument continues, their right to use the POLO mark as described in their licensing and assignment

---

**7.** The knowledge that confusion is probable is not equated with a wrongful intent to deceive, relevant for damage considerations, where, as in the case of Extra Special, a defendant claims to act in the belief that his rights are superior to plaintiff's. 4 Callmann, *Unfair Competition, Trademarks and Monopolies*, § 89.2(a)(3d ed. 1970).

**8.** *See* footnote 6, *supra.*

agreements, is senior to plaintiff's, since the marks are variations of the registered mark filed in 1937.

The Magistrate found that, even setting aside the serious challenge to Lomar's subsisting rights in Registration 348,012, defendants' springboard attempt at seniority had failed. Neither prong of the *Ilco* test was met since not only did defendants' new marks create a substantially different commercial impression from Registration 348,012, but also the registered mark had not been in recent use. Therefore, because the infringing marks did not qualify as variations of the prior registered mark and because Lomar's earliest possible use of the infringing mark was in 1972, well after plaintiff had established its common law rights in the marks, defendants are justifiably regarded as second comers.

Defendants also object to what they characterize as the Magistrate's failure to include findings on plaintiff's probable success on the merits and irreparable injury necessary to the issuance of preliminary injunctive relief. While scarcely requiring restatement, the classic formulation of the Second Circuit's view is that a preliminary injunction:

"should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." (emphasis in original.)

*Sonesta International Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir. 1973). While there has been some debate whether the second alternative also requires a showing of irreparable injury, see W. Mulligan, "Preliminary Injunction in the Second Circuit," 43 Brooklyn L.Rev. 831 (1977), the Magistrate clearly concluded that in this case the standards for the first alternative had been met.

In trademark cases, injunctive relief is warranted when plaintiff demonstrates confusing similarity of the marks and its senior right to use of the trademark. *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134 (2d Cir. 1972). Courts recognize that where there exists "high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." *Omega Importing Corp. v. Petri-Kine Camera Corp.*, 451 F.2d 1190, 1195 (2d Cir. 1971); *see National Lampoon, Inc. v. American Broadcasting Cos.*, 376 F.Supp. 733, 750 (S.D.N.Y.), *aff'd*, 497 F.2d 1343 (2d Cir. 1974).

Thus, while the Magistrate made all the findings necessary to support the preliminary injunction, he did not restate them under that heading of his report, referring, instead, to the standards of *Omega Importing Corp. v. Petri-Kine Camera Corp., supra*. Short of underlining his findings in red ink, it appears that there was little more he need do. To dispel any lingering confusion on the point, the Court finds that plaintiff has demonstrated probable success on the merits and possible irreparable injury.

While the foregoing opinion was primarily addressed to the claims of trademark infringement and right to relief under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), it should be pointed out that under the law of unfair competition, "it is, if anything, easier for the plaintiff to prevail." *Mortellito v. Nina of California, Inc., supra* at 1295. There is no need to show the likelihood of confusion or secondary meaning, if instances of actual palming off and deception are involved. *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569 (2d Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); *Fund of Funds, Ltd. v. First American Fund of Funds*, 274 F.Supp. 517, 524 (S.D.N.Y.1967). Here there has been a demonstrable instance of palming off. Moreover, unfair competition focuses upon a balancing of the equities. On this point, it is relevant that Extra Special, which by virtue of the December assignment is the only entity claiming the right to use the marks, need only replace the labels on its line of sportswear

**564**

and refrain from advertising as a "POLO" brand to eliminate the likelihood of confusion. When a balance is struck between plaintiff's vested interest in trademark and the ease with which defendant can avoid infringement without damage to the product, the equities are clearly on plaintiff's side.

The dilution claim under Section 368–d of New York's General Business Law will not be considered since plaintiff has prevailed on its other theories.

The defendants object generally that the Magistrate's report contains additional legal and factual errors and urge the Court to conduct an additional hearing. While the Court adopts the Magistrate's legal conclusions only to the extent indicated by the foregoing opinion, having considered defendants' objections, the Court cannot discern an outstanding factual issue requiring resolution. A hearing, therefore, is unnecessary. Plaintiff will settle, on notice, a preliminary injunction decree.

SO ORDERED:

APPENDIX A TO OPINION

Plaintiff's Registered Mark

Defendant Lomar's Registration 348,012

Claimed. Variations of Registration 348,012