The GOODYEAR TIRE & RUBBER COM-
PANY, Plaintiff,

v.

H. ROSENTHAL CO., Defendant.

No. 3–64–Civ. 357.

United States District Court
D. Minnesota,
Third Division.

May 12, 1965.

Dugger, Johnson & Westman, Minneapolis, Minn., for plaintiff, Browne, Schuyler & Beveridge, Washington, D. C., of counsel.

Dworsky & Rosen, St. Paul, Minn., for defendant.

LARSON, District Judge.

The Goodyear Tire & Rubber Company brought this action against H. Rosenthal Co. alleging unfair competition through infringement of its trademark and passing-off of goods. Jurisdiction is based on diversity of citizenship.[1]

---

1. The goods involved were being sold in interstate commerce, so the Court also has jurisdiction of the trademark infringe-ment claim under section 43(a) of the Lanham Act, 60 Stat. 441 (1946), 15 U.S.C. § 1125(a). See: Federal-Mogul-

The plaintiff sought a preliminary injunction and introduced evidence to support its request at a hearing held on December 28, 1964. The Court granted the injunction on that day.

■ The defendant had not completely developed its case in opposition at the time of the first hearing, so it moved to dissolve the injunction and introduced evidence to support that motion at a second hearing held on January 14, 1965. Although two separate motions were involved, the hearings were closely related and the Court considers both of them as integral portions of a single proceeding. Taking all the evidence introduced at both hearings, the burden is on the plaintiff to show that it is entitled to the preliminary injunction it seeks.

■ If on all the evidence the Court believes that it is "quite probable that upon a final hearing the material allegations of the complaint will turn out to be true," a temporary injunction is proper.[2]

The following facts appear from the record.

The defendant is a merchandising concern which sells a varied line of goods at both the wholesale and retail level. It has annual gross sales of about $650,000 to $700,000. Most of these sales are made in Minnesota and the States immediately bordering it, although some are made all over the country.

The defendant owns only one retail outlet. That is located in St. Paul, Minnesota, and accounts for about ten per cent of its business.

Over the years the defendant has handled several economy lines of rubber boots and rainwear. These items, accounting for about ten to fifteen per cent of the defendant's business, are the only ones involved in this lawsuit.

Before 1962 the defendant purchased all its rainwear from other distributors and manufacturers. The three sources now relevant and a sample of the labels they used on their goods are:[3]

| Corporation | Label |
| --- | --- |
| Weather-Rite Sportswear Co., Inc. | GOODYEAR Deluxe by Weatherite |
| Irving Raincoat Co., Inc. | GOODYEAR Deluxe by I R Co. |
| Rettinger Raincoat Mfg. Co., Inc. | GOODYEAR by Lucky Rainwear |

In 1962 the defendant began ordering some of its rainwear direct from Japanese manufacturers. The manufacturers, at defendant's request, put in one of the following labels:

GOODYEAR Deluxe by H R Co.

GOODYEAR Deluxe by Spacecraft.

While the five labels listed above vary in wording and appearance, they all have common features. The word "GOOD-YEAR" always appears at the top of the label on a line by itself. It is printed in block capital letters in a type size that is usually larger than that used for any of the other wording. The rest of

Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 408–09 (6th Cir. 1963). The extent of the plaintiff's rights under the Lanham Act is a matter of Federal law. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3rd Cir. 1954). Because Minnesota law appears clearer and is dispositive of the issues before me, the Court will not consider the extent of the plain-

tiff's rights under § 43(a) of the Lanham Act.

2. Village of Blaine v. Independent School Dist. No. 12, 265 Minn. 9, 23, 121 N.W.2d 183, 193 (1963).

3. The labels given are only illustrative. There are actually numerous variations on these themes.

the words are printed in different type faces. All of the wording on the labels is clearly legible.

The plaintiff claims that these five labels and similar ones are misleading in that the use of the word "GOOD-YEAR" suggests that the plaintiff is the source of the goods or the material used in them. Two types of harm to the plaintiff are suggested. The plaintiff manufactures a vinyl film which it sells to a firm making rainwear. Such rainwear carries a tag with, among other things, the name Goodyear on it. Thus some of the products handled by the defendant are in direct competition with those sold by a manufacturer licensed by the plaintiff.

The plaintiff also claims that the goods being sold are of an inferior quality so that its own reputation as a manufacturer of quality products is being injured by the confusion caused by the labels.

The plaintiff has sought a preliminary injunction prohibiting three types of practices, i. e., (1) passing-off of these goods by oral misrepresentations, (2) sale of any goods in which the labels "GOOD-YEAR Deluxe by H R Co." or "GOOD-YEAR Deluxe by Spacecraft" appear, and (3) sale of any goods purchased from other firms in which any of the other labels listed above appears.

I. *Passing-off*

 The plaintiff produced two affidavits from shoppers it had sent to the defendant's retail outlet. The shoppers stated that some of defendant's clerks told them that labels like those complained of meant that the plaintiff was responsible for the manufacture of the goods.

While agents of the plaintiff did elicit some of the misrepresentations, that does not lessen the effectiveness of the affi-davits.[4] The affidavits are not contradicted, although it may well be that the misrepresentations were inadvertent rather than deliberate.

In any case, the Court has little hesitation about granting this portion of the relief requested, since it deprives the defendant of no rights. The acts or oral passing-off which are forbidden would clearly be illegal in any case.

II. *Sale of Goods Bearing Labels for which the Defendant is Responsible*

The plaintiff seeks to bar the sale of all goods labeled "GOODYEAR Deluxe by Spacecraft" and "GOODYEAR Deluxe by H R Co." Whether it has any right to such relief depends on whether it can show that the term "GOODYEAR" has acquired a secondary meaning so that the public equates that term with goods made by the plaintiff.[5] That issue of fact is the principal question in this litigation. In support of its claim, the plaintiff advanced the following items:

1. The plaintiff currently spends more than 30 million dollars a year for advertising within the United States. Between 1952 and 1961 the advertising expenditures of the plaintiff exceeded 230 million dollars.

While there was no showing as to just what portion of the advertising made use of the term "Goodyear" standing alone, it was indicated that this was the most common designation used to tell the public who the manufacturer of the goods advertised actually was. The word "GOODYEAR" is frequently printed in block capitals.

The size of the advertising expenditures alone is extremely strong evidence of secondary meaning.[6] During 1963 the

---

4. Precisely this kind of evidence of passing-off was approved in J. C. Penney Co. v. H. D. Lee Mercantile Co., 120 F.2d 949, 957 (8th Cir. 1941) and Stewart Paint Mfg. Co. v. United Hardware Distrib. Co., 253 F.2d 568, 572 (8th Cir. 1958).

5. Good discussions of the doctrine of secondary meaning are to be found in G. &

C. Merriam Co. v. Saalfield, 198 F. 369, 373 (6th Cir. 1912) (Denison, J.); 1 Seidel, Dubroff & Gonda, Trademark Law and Practice § 17.01 (1963); and Nims, Unfair Competition and Trade Marks §§ 72–73 (4th ed. 1947).

6. See: The Glidden Co. v. Gilman Paint & Varnish Co., 110 U.S.P.Q. 380 (Comm'r 1956) and In re Hollywood Brands, Inc.,

plaintiff was the twenty-sixth largest industrial corporation in the United States, with gross sales of over one and one-half billion dollars.[7] Any corporation of this size which deals extensively in consumer goods is going to be very well known among the general public.

2. The plaintiff has introduced many letters from purchasers or prospective retailers of rainwear which indicate that the labels complained of were thought by the writers to indicate that the plaintiff was associated with the goods. These represent unsolicited evidence that members of the buying public and even retailers associated the term "GOOD-YEAR" with the plaintiff.

3. Many of the affidavits submitted to show that passing-off was occurring have the same effect. While a few of the affidavits may represent situations in which fraudulent intent was present, many of them appear to describe situations in which the retail clerk's misrepresentation was the result of his natural inferences from the label. Indeed, this is the reading of those affidavits that the defendant has suggested.

To combat this evidence of secondary meaning, the defendant offers three types of evidence:

1. Some reliance is placed on the decision in Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U.S. 598, 9 S.Ct. 166, 32 L.Ed. 535 (1888) in which the Court held that the term "Goodyear Rubber" was descriptive and therefore not available for appropriation as a trademark. That case is clearly irrelevant here, since it has no bearing on the issue of secondary meaning.

■ The major thrust of the entire secondary meaning doctrine is that words not capable of being adopted as trademarks because they are generic or descriptive may become entitled to legal protection if one producer makes such extensive use of them that the public regards the words used as synonymous with the manufacturer.

2. Evidence was introduced to show that:

(a) There are four other firms in the rubber goods industry which use the word "Goodyear" as a part of their corporate name, and

(b) There have been many trademarks registered by people other than the plaintiff which contained the word Goodyear.

The fact that other companies in the industry use the word "Goodyear" in their names is not very useful without evidence as to the way in which the word is used in advertising their products.

Furthermore, there is no doubt that the four companies cited by defendant are very small when compared with the plaintiff. E. g., it appears that they employ a total of about 1,200 people. The plaintiff employs about 103,000.[8]

Defendant's list of twenty-one registered trademarks using the term "Goodyear" is also very weak evidence when submitted without any indication of the extent and manner in which the term has been used.[9] Also, many of these trademarks appear to have expired.

■ 3. The last evidence of the defendant is much more relevant on the issue of secondary meaning. The defendant points out that Weather-Rite, Irving and Rettinger have all used the term "GOODYEAR" in their rainwear over a long period of time. There is also a firm called the Nelson Sales Co. which has

---

214 F.2d 139, 141, 41 CCPA 1001 (C.C.P.A. 1954).

7. Fortune, June 1964, pp. 180–81 (The ranking is by sales.).

8. These estimates are taken from a directory of the industry; i.e., the Rubber Red Book (17th ed. 1965). Employment figures given for three of the firms total

1,185 people. No figures are given for the fourth firm, but it appears to be quite small.

9. Time, Inc. v. Life Television Corp., 123 F.Supp. 470, 474–75 (D.Minn.1954). Things are even clearer in the present case because the plaintiff itself has registered over fifty trademarks using the term "Goodyear."

used the phrase "GOODYEAR BY NELSON" in its advertising. There is, however, no showing as to the extent of the use. It appears that several of these companies only use the term on a small portion of the merchandise they sell. Basically, this type of actual use and public awareness of it is the kind of evidence which the defendant must have if it hopes to prevail at trial on this issue. On the basis of the evidence presented thus far, however, the Court does not feel that the defendant's chance of sustaining its position at trial is very good. It is clear that the plaintiff's use of the term "Goodyear" in the last twenty years has been on a much wider scale than all uses of the term by others combined.[10] The Court concludes that the plaintiff has met its burden of proof on the issue of secondary meaning.

The next issue is whether the words "Deluxe by H R Co." or "Deluxe by Spacecraft" have any ameliorating effect. These words appear on lower lines than the term "GOODYEAR" and in different sizes and styles of type. The standards which govern this kind of determination are listed in David Sherman Corp. v. Heublein, Inc., 340 F.2d 377, 379–80 (8th Cir. 1965).[11]

██ The Court has little difficulty in concluding that these designations do not serve to relieve the confusion caused by the use of the word "GOODYEAR." If they have any effect at all, it is only to suggest that the goods so labeled are manufactured by licensees or subsidiaries of the plaintiff. The affidavits relating to passing-off show that this is the inference in the minds of the retail clerks selling the goods.

Thus the plaintiff is entitled to injunctive relief with respect to all goods ordered and imported directly by the defendant. Since these goods are already labeled, nothing need be decided at present about the possibility of permitting the use of the term "GOODYEAR" with adequate explanatory language. The sale of the goods bearing these labels is enjoined.

III. *Sale of Goods Bearing Labels which were not put in at the Defendant's Direction*

██ The previous discussion makes it plain that the labels used by Weather-Rite, Irving and Rettinger are also misleading. The defendant does not stand in any better position as a wholesaler of these goods than it would if it had put the labels in itself.[12]

But the other manufacturers appear to have used labels bearing the word "GOODYEAR" over a period of years. The use may be sufficient to allow one or more of them to maintain that the plaintiff is estopped to restrict their use of the term.

The law regarding the application of the doctrine of estoppel to trademark cases varies widely between jurisdictions. Some courts give the doctrine full scope, while others hold that only rights to damages for past use can be lost by estoppel.[13]

The Court has not been directed to any Minnesota cases on this point.

None of the other manufacturers are parties to this suit. As a result, the Court seriously questions whether, in the exercise of its equitable discretion, it should not ultimately dissolve this last ban of the injunction rather than to af-

10. This is the implication of an FTC proceeding against Rettinger to prevent it from using only the term GOODYEAR on its labels. 53 F.T.C. 132 (1956).

11. While that was an action for trademark infringement under the Trade-Mark Act of 1946, the principles applicable here are the same.

12. Restatement, Torts § 734, comment b (1938); Saratoga Vichy Spring Co. v.

Saratoga Carlsbad Corp., 45 F.Supp. 260, 261 (S.D.N.Y.1942).

13. Compare Procter & Gamble Co. v. J. L. Prescott Co., 102 F.2d 773, 780 (3rd Cir. 1939) with Blue Goose Auto Serv. v. Blue Goose Super Serv. Station, 110 N.J.Eq. 547, 160 Atl. 316 (Ct. Err. & App. 1932). See: Developments in the Law—Trade-Marks and Unfair Competition, 68 Harv. L.Rev. 814, 885–892 (1955).

fect the rights of the other manufacturers without having heard them.

Yet it seems appropriate to continue this section of the preliminary injunction until trial. The plaintiff has made a prima facie showing of unfair competition, even if there are other considerations which may ultimately lead the Court to decline to interfere with the activities of third parties. Also, the financial losses to the defendant from this portion of the injunction could ultimately be determined much more easily than the injury to the plaintiff of having these goods sold.

The plaintiff's motion for a preliminary injunction is granted in all respects. The defendant's motion to dissolve is denied.