**BONANZA INTERNATIONAL, INC.,**
**Plaintiff,**

v.

**DOUBLE "B"., a corporation, and Glenn Bennett, an individual, Defendants.**

**No. 3-71-Civ-216.**

United States District Court,
D. Minnesota,
Third Division.

Sept. 30, 1971.

Dorsey, Marquart, Windhorst, West & Halladay, Emery W. Bartle, Minneapolis, Minn., for plaintiff.

David W. Thurston, St. Paul, Minn., for defendants.

### MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This matter is here on plaintiff's motion for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Plaintiff alleges defendant has infringed his registered service marks, engaged in practices constituting unfair competition and violated a covenant not to compete. Plaintiff seeks injunctive relief restraining defendant from using the service marks, any signs, literature, or other property referring to or simulating the layout or method of operation of plaintiff's restaurants; from continuing to advertise itself as a franchised dealer of plaintiff; from engaging in unfair competition with plaintiff; and from engaging in the "low cost" steak dinner business within an

area delineated in the licensing agreement. Jurisdiction of the court is based on 28 U.S.C. § 1338 with plaintiff's claim arising under 15 U.S.C. § 1051.[1]

Plaintiff is engaged in the business of franchising "Bonanza Sirloin Pit" restaurants which specialize in "low cost" steak meals. The franchise operations are located in thirty states and include 208 units, two in the Minneapolis-St. Paul metropolitan area. In March of 1966 the area distributor for plaintiff's predecessor in interest entered into a licensing agreement with the individual defendant acting on behalf of the corporate defendant pursuant to which defendant began operation of a franchised restaurant at the location in question.[2]

In April of 1968 plaintiff's local area distributorship was discontinued and defendant was directed to forward sales reports and royalties directly to plaintiff in Dallas, Texas.[4] Plaintiff alleges that beginning in January of 1970, defendant breached the licensing agreement by, *inter alia,* failing to submit these required items.[4] On July 22, 1971 the licensing agreement between defendant and plaintiff was terminated and on August 24, 1971 plaintiff brought this action.

Plaintiff claims that as a result of the similarity of appearance and method of operation between the restaurant operated by defendant and plaintiff's restaurants, confusion results as to whether defendant's restaurant is in fact one franchised by plaintiff. In addition plaintiff claims that the name "Bonanza" and the design, furnishings, fixtures, decor, layout, menu, and method of operation have all acquired a secondary meaning in that substantial numbers of individuals associate these items with restaurants franchised by plaintiff. Plaintiff bases this contention on the large amounts it has spent nationally on advertising, the technical assistance it provides its franchisees, and the customer goodwill it has worked to build.[5] Plaintiff concludes that defendant's actions in continuing to operate a restaurant featuring a decor, method of operation, and menu similar to plaintiff's constitute unfair competition.

Although the amount of advertising engaged in is one factor to be used in determining if an item has developed secondary meaning, the existence of secondary meaning is ultimately determined by a review of all factors involved in a given situation. Goodyear Tire & Rubber Co. v. H. Rosenthal Co., 246 F.Supp. 724 (D.Minn.1965). Even though plaintiff in some instances where

1. Under § 1338 the district courts have original jurisdiction in any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. In addition the district courts have jurisdiction over claims of unfair competition when joined with substantial and related claims under the copyright, patent or trade-mark laws. In the alternative jurisdiction is based on 28 U.S.C. § 1332 (Diversity of Citizenship).

2. Defendant's restaurant is located on the state fair grounds in St. Paul. Although the operation is open throughout the year, the bulk of defendant's business is done during the ten day state fair which is held in late August and early September.

3. Since that date no new area distributor has been designated. Plaintiff's promotional material characterizes the importance of an area distributor in the following terms. "Much of the Bonanza chain success story is directly attributed to full development and utilization of the Area Distributor concept * * *. We believe direct licensing only impedes the growth of a franchise chain."

4. Defendant in his affidavit filed in opposition to plaintiff's motion here alleges that he ceased forwarding reports and royalties to plaintiff after plaintiff had failed to supply quality meats to defendant, failed to aid defendant in the operation of his restaurant and failed to comply with various provisions of the franchise agreement.

5. The affidavit of Julian Dodd, Regional Director of Operations for plaintiff, filed in support of plaintiff's motion states that plaintiff spent $133,000 for advertising in 1970 nationally. In addition $200,000 is said to be budgeted for national advertising in 1971. Plaintiff in his affidavit questions the amount spent in the local area and the effect of plaintiff's advertising programs.

he has actively sought additional franchises may have an interest in the sale of these franchises, a franchisor has no protectable business interest in the mere method and style of doing business. Shakey's Inc. v. Martin, 91 Idaho 758, 430 P.2d 504 (1967). Here plaintiff claims that the western motif in his restaurants has acquired a secondary meaning. This does not seem likely, particularly in the geographical area in question. Since April of 1968 there has been no area distributor to engage in or supervise chain publicity, promotions or advertising.[6] Since defendant began his operation four additional franchisees of plaintiff in the area have begun and ceased operation. Currently only two of plaintiff's franchised operations are open in the local area and only one of these advertises in the classified section of the telephone directory.

On these facts plaintiff has not shown that either the name "Bonanza" or its method of operation has acquired a secondary meaning. In addition plaintiff has not shown it has gained a protectable business interest in the sale of its franchises in this area.

■■ Plaintiff next seeks to enjoin defendant from breaching the covenant not to compete contained in the licensing agreement.[7] Although in interpreting this covenant we are bound by Minnesota law, each case necessarily must depend on the specific facts involved. State Farm Mutal Automobile Ins. Co. v. Hedberg, 236 F.Supp. 797 (D.Minn. 1964), aff'd 350 F.2d 924 (8th Cir. 1965). In addition the burden is upon plaintiff to prove the existence of irrep-

arable harm entitling him to the preliminary injunction he seeks. Goodyear Tire & Rubber, *supra*; Thermorama Inc. v. Buckwold, 267 Minn. 551, 125 N. W.2d 844 (1964). Here plaintiff has failed to meet this burden. The nature and location of defendant's restaurant coupled with the seeming lack of interest plaintiff has shown in commercially developing this area vitiate any conclusion that plaintiff would be irreparably harmed if his request for a temporary injunction is denied.

■ Plaintiff finally asks that the items bearing the registered service marks be delivered by defendant to plaintiff for destruction. Defendant's request here is based on 15 U.S.C. § 1118.[8] But section 1118 on its face permits the trial court to determine whether or not to order the delivery and destruction of the infringing items, Frostie Co. v. Dr. Pepper Co., 361 F.2d 124 (5th Cir. 1966), and under the circumstances, since defendant has been enjoined from the use of the items bearing plaintiff's registered marks; it is not believed that such delivery is necessary at this time.

Therefore the preliminary injunction restraining defendant from using plaintiff's registered service marks or items bearing these marks issued September 1, 1971 is continued in effect. The remainder of plaintiff's motion for a preliminary injunction is denied. This memorandum constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.

---

6. Defendant in his affidavit alleges these to be duties of an area distributor under the licensing agreement.

7. Paragraph 14 of the agreement provides: "Upon the termination of the agreement, and for a period of two (2) years thereafter, the licensee * * * shall not directly or indirectly engage in the low cost steak dinner restaurant business within a radius of fifty (50) miles from an area in which he now resides or in which the licensee * * * shall estab-

lish his * * * Bonanza Sirloin Pit. * * * *"

8. Section 1118 provides: "In any action arising under this chapter, in which a violation of any right of the registrant of a mark registered in the Patent Office shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or any reproduction * * * shall be delivered up and destroyed."