POLO FASHIONS, INC. Plaintiff,
v.
Pierre RABANNE, et al., Defendants.
POLO FASHIONS, INC. Plaintiff,
v.
COUNTY LINE FASHIONS, INC., et al., Defendants.

Nos. 84–1763–Civ., 84–2991–Civ.

United States District Court,
S.D. Florida.

Sept. 9, 1986.

Robert W. Wells, Smathers & Thompson, Miami, Fla., for plaintiff.

Mark A. Levine, Miami, Fla., for defendants.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

ZLOCH, District Judge.

## I. FINDINGS OF FACT

*The Parties*

1. Plaintiff, Polo Fashions, Inc. (hereinafter referred to as "Polo"), is a corporation organized and existing under the laws of the State of New York, having an office and place of business at 40 West 55th Street, New York, New York 10019.

2. Defendant, Jay Miller (hereinafter Defendant) is a resident and citizen of the State of Florida. He was the general manager for Pierre Rabanne, County Line Fashions and Tony's Joint Venture.

*Background*

3. Polo is a renowned fashion house, which, under the direction of its chairman and designer, Ralph Lauren, styles, manufactures and sells, both directly and through related companies and licensees, diverse articles of men's and women's wearing apparel identified by the trademarks and trade names, POLO, RALPH LAUREN, POLO BY RALPH LAUREN and a fanciful representation of polo player on a horse (the "Polo Player Symbol") both individually and as composite trademarks, including a composite mark consisting of the mark Ralph Lauren in combination with the Polo Player Symbol (the "Ralph Lauren Logo") (collectively the "Polo Trademarks"). These trademarks are depicted below:

4. Commencing at least as early as 1967, Polo adopted one or more of The Polo Trademarks for diverse articles of men's and women's wearing apparel and accessories and caused these trademarks to be registered in the United States Patent and Trademark Office. Polo's current U.S. Trademark Registrations include, among others: Registration No. 978,166 of February 5, 1974 for the trademark POLO BY RALPH LAUREN, in a distinctive style for diverse items of wearing apparel; Registration No. 984,005 of May 14, 1974 for the Ralph Lauren Logo trademark for diverse items of apparel; Registration No. 990,395 of August 6, 1974 for the trademark POLO BY RALPH LAUREN for retail clothing store services; and Registration No. 1,050,-722 of October 19, 1976 for the Ralph Lauren Logo trademark for diverse items of women's apparel, including shirts and tee-shirts (the "Polo Registrations").

5. The Polo Registrations are in full force and effect, and the trademarks thereof and the goodwill of the business of Polo in connection with which the trademarks are used have never been abandoned and are licensed throughout the United States

and elsewhere throughout the world by Polo through related companies.

6. In addition to the menswear line, Polo markets through licensees a broad line of other products under the Polo Trademarks, such as womenswear, boyswear, girlswear, leather goods and hosiery.

7. The Polo menswear line is distributed only by Polo through its sales force directly to selected retail customers.

8. For the fiscal year 1984, the volume of products sold by Polo at wholesale exceeded $125,000,000. For that year, the volume in units of menswear POLO knit shirts exceeded 3,500,000.

9. Polo maintains strict control over the quality of its knit shirts. All POLO knit shirts produced for Polo by its contractors are sent to Polo's distribution facility in Carlstadt, New Jersey; there they are subsequently shipped by Polo pursuant to a retail customer's order.

10. Knit shirts which do not meet Polo's quality standards are sold by Polo in one of its own outlet stores with their neck labels cut and marked as "irregular," and are always labeled as such.

11. There is actual harm suffered by POLO and consumer confusion from the sale of counterfeit POLO goods in the marketplace. Particularly, once a consumer buys an inferior quality counterfeit garment and experiences dissatisfaction, that consumer is less likely to buy genuine POLO garments. The customer feels that the rest of the merchandise bearing the POLO label will be as inferior as the counterfeit items.

12. The Polo Trademarks have come to be identified by the general public with goods and services emanating from, sponsored by, authorized by or affiliated with Polo.

*Defendant Jay Miller*

13. Defendant Jay Miller ("Miller") was the general manager for Pierre Rabanne, a manufacturer of apparel. Subsequently Pierre Rabanne became Tony's Joint Venture. Miller testified that while working at Tony's Joint Venture he never shipped any POLO garments. Thereafter, Miller was a "packer" at County Line Fashions, Inc. ("County Line"). At County Line, he acknowledged handling, as a packer only, "not many" POLO garments. Miller's testimony is not credible.

14. The third party discovery taken by Polo in this matter, disclosed a far different picture than that testified to by defendant Miller. Harvey Gelber ("Gelber") testified that in August, 1982 he purchased 2,376 POLO knit shirts for $23,760.00 from Pierre Rabanne. Gelber stated that Miller was the only individual he dealt with at Pierre Rabanne. Miller was in charge of the sale of the POLO knit shirts; Gelber picked up the shirts from Miller and paid him.

15. Harry Mullins ("Mullins") testified that, commencing in the fall of 1982, he obtained over Twenty-Six Thousand (26,-000) POLO garments from Miller. The selling price of these garments ranged from $11.75 to $18.75. Mullins testified that he was one of twelve salesmen for Miller, covering the states of Alabama, Tennessee, North Carolina and Kentucky. At various times Mullins' commission checks were drawn on the accounts of Pierre Rabanne, Tony's Joint Venture and County Line. Mullins explained the name changes as follows: ."[W]hatever suited their fancy at the time. They had a policy every 90 days of changing their name.... I felt it was to keep a step ahead of everybody that was trying to find them." Mullins further stated that no matter the name of the entity, he always worked with defendant Miller. Miller was "running the show".

16. Paul Dascomb ("Dascomb"), was a salesman for Miller, in the state of Arkansas, Oklahoma and Texas, and sold POLO garments on his behalf. He received in excess of 7,500 POLO garments from Miller. Defendant's selling price of these garments was at least $11.75 per garment. Dascomb testified that Miller directed the operation of Tony's Joint Venture. "He seemed to be the one that ran things and

took care of the business end of it." (Dascomb 13).

17. The following table summarizes the quantitive sales made by Gelber Mullins and Dascomb:

| NAME | QUANTITY | REVENUE |
|---|---|---|
| Gelber | 2,376 @ $10.00 | $23,760.00 |
| Mullins | 12 weeks x 15 doz. @ $11.75 | 25,380.00 |
| Mullins | 12 weeks x 30 doz. @ $16.00 | 69,120.00 |
| Mullins | 48 weeks x 35 doz. @ $11.75 | 236,880.00 |
| Dascomb | 7,500 @ $11.75 | 88,125.00 |
| | TOTAL | $443,265.00 |

18. Eight (8) retail apparel outlets in Texas and New York, have identified their respective cancelled company checks proffered in payment for POLO garments they purchased. Each of these retailers identified checks which were deposited in the bank accounts of either Tony's Joint Venture or County Line (Shulse 1–8, Exh. 1; Finstad 1–14, Exhs. 1–4; Shearer 1–17, Exhs. 1–3; Williams 1–9, Exh. 1; Barnard 1–12, Exhs. 1–3; Phillip 1–13, Exh. 1; Elliot 1–12, Exhs. 1–2; Bernstein, Exhs 1–3).

19. The deposition testimony of these eight retailers corroborates the statements made in the declarations of the fifteen other retailers which Polo introduced as direct evidence during the trial (Exh. 74).

## II. CONCLUSIONS OF LAW—LIABILITY

1. This action arises under the provisions of the Trademark Act of 1946 (hereinafter referred to as the "Lanham Act"), 15 U.S.C. § 1051 et seq., particularly 15 U.S.C. § 1114(1) and § 1125(a), and for unfair competition under the laws of the State of Florida. This Court has jurisdiction over the subject matter of this claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Jurisdiction is proper over the defendant pursuant to the laws of the State of Florida and Rule 4 of the Federal Rules of Civil Procedure.

2. The issues tried to the Court included a determination as to whether the defendant is liable for trademark infringement under 15 U.S.C. § 1114 and § 1125(a) and for unfair competition under the laws of the State of Florida. The issues related to relief include permanent injunctive relief and damages, including an accounting of monetary relief pursuant to 15 U.S.C. § 1117, calculation of the defendant's profits to be awarded to Polo, trebling thereof, and a determination of costs and attorneys' fees.

*Polo's Trademark and Unfair Competition Claims*

3. The Polo Trademarks, as used on apparel, are arbitrary and fanciful marks. *Polo Fashions, Inc. v. Gordon Group*, 627 F.Supp. 878 (M.D.N.C.1985); *Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648, 651 (D.Mass. 1984); *United States Polo Association, Inc. v. Polo Fashions, Inc.*, Civil Action No. 84 Civ. 1142 (LBS) (S.D.N.Y.1984).

4. As a result of their length of use, extensive advertising and volume of sales, the Polo Trademarks have achieved a secondary meaning as denoting products emanating from, authorized by or sponsored by Polo. *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); *Harlequin Enterprises Limited v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir.1981); *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656 (2d Cir. 1970); *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555 (S.D. N.Y.1978); *Sears, Roebuck & Co. v. Allstate Driving School, Inc.*, 301 F.Supp. 4 (E.D.N.Y.1969); *Goodyear Tire & Rubber Co. v. H. Rosenthal Co.*, 246 F.Supp. 724 (D.Minn.1965).

*Likelihood of Confusion*

5. Likelihood of confusion is the standard used to determine whether two marks or names are sufficiently similar so that the second owner's use may be considered to infringe and encroach upon the proprietary rights of the trademark owner. The test for likelihood of confusion involves a balancing of many factors in light of the particular facts of each case, usually including at least the following factors:

a. the strength of the senior user's mark;

b. the similarity between the marks;

c. the proximity of the products;

d. the methods of marketing the products;

e. the junior user's good faith in adopting the mark;

f. the quality of the junior user's products; and

g. the sophistication of the relevant segment of the purchasing public.

Restatement of Torts §§ 729, 731; *Chesebrough-Pond's, Inc. v. Faberge, Incorporated,* 666 F.2d 393 (9th Cir.1982), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 277 (1982); *McGregor-Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir.1979); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44 (2d Cir.1978); *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d. Cir.1961), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Aris-Isotoner Gloves Inc. v. Fownes Brothers & Co., Inc.,* 594 F.Supp. 15, 222 U.S.P.Q. 489 (S.D. N.Y.1983);

*Strength of the Polo Trademarks*

■ 6. The same evidence which establishes that The Polo Trademarks, including the Polo Player Symbol and POLO BY RALPH LAUREN trademarks, have acquired secondary meaning also demonstrates that these Polo Trademarks have acquired great strength and are entitled to a broad scope of protection. *Polo Fashions, Inc. v. Gordon Group, supra,* p. 887; *Polo Fashions, Inc. v. Branded Apparel Merchandise, supra,* p. 651; *United States Polo Association Inc. v. Polo Fashions, Inc., supra,* p. 1465. *See also Beneficial Corp. v. Beneficial Capital Corp.,* 529 F.Supp. 445 (S.D.N.Y.1982); *Rolls-Royce Motors Limited v. A & A Fiberglass, Incorporated,* 428 F.Supp. 689 (N.D.Ga.1977); *Sears, Roebuck & Co. v. Allstate Driving School,* 301 F.Supp. 4 (E.D.N.Y.1969).

7. The use by defendant of the trademarks constitutes unfair competition and trademark infringement. *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir.1975) *cert. denied* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975), *reh. denied,*

423 U.S. 991, 96 S.Ct. 408, 46 L.Ed.2d 312 (1975); *Rolls-Royce Motors Ltd. v. A & A Fiberglass Incorporated,* 428 F.Supp. 689 (N.D.Ga.1976); 1 Gilson, *Trademark Protection and Practice* § 5.05[10] (1983).

*Similarity of Marks*

8. Defendant has chosen two marks that are identical to plaintiff's marks. Consumers, upon seeing defendant's marks, will be confused into believing that defendant's shirts are authorized or sponsored by or affiliated with the plaintiff. *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689 (2d Cir.1972); *Polo Fashions Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555 (S.D.N.Y.1978).

*Proximity of The Products*

9. Both Polo and the defendant use their marks on identical products, *e.g.,* knit sport shirts, sweaters and sweatshirts. Therefore, the use by defendant of the marks POLO BY RALPH LAUREN and the Polo Player Symbol is likely to cause confusion, mistake and deception as to the source of the goods originating with defendant. *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366 (7th Cir.1976), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *Grotrian, Helfferich, Schultz The Steinweg Nachf v. Steinway & Sons,* 523 F.2d 1331 (2d Cir.1975); *Jockey International Inc. v. Burkard,* 185 U.S. P.Q. 201 (S.D.Cal.1975).

*Methods of Marketing the Products*

10. Both Polo and the defendant market their goods through similar channels of trade, retail stores. This factor further compels the conclusion that defendant's use of a copy of the POLO BY RALPH LAUREN and Polo Player Symbol is likely to cause confusion and mistake and deceive the consuming public into believing that its goods originate with or are sponsored by Polo. 15 U.S.C. §§ 1114(1), 1125(a); *Restatement of Torts* §§ 729, 731; *McGregor-Doniger Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir.1979); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir. 1961) *cert. denied,* 368 U.S. 829, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Aris-Isotoner Gloves, Inc. v. Fownes Brothers & Co.,* 594

F.Supp. 15, 222 U.S.P.Q. 489 (S.D.N.Y. 1983).

### The Quality of Defendant's Shirts

11. Polo has a reputation for excellence in the design and quality of its goods, including its knit garments. Defendant's garments, on the other hand, are of inferior quality. Thus, in light of the confusing similarity between the marks and the symbols, Polo's reputation will be injured and the good will in its name will be impaired if consumers erroneously believe that defendant's garments originate with Polo. *Polo Fashions Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555, 560–61 (S.D.N.Y. 1978); *James Burrough, Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574 (7th Cir. 1978); *Yale Electric Corp. v. Robertson*, 26 F.2d 972 (2d Cir.1928);

### The Sophistication of the Purchasers

12. The goods in issue—sports wear—are minor purchases that may be categorized as "impulse" purchases. Consumers do not scrutinize shirts, sweaters, and sweatshirts carefully to discern the differences between the symbols displayed on the garments. *Omega Importing Corp. v. Petri-Kine Camera Co., Inc.*, 451 F.2d 1190 (2d Cir.1971).

### Defendant's Lack of Good Faith

13. Defendant's selection of identical trademarks to the POLO BY RALPH LAUREN and Polo Player Symbol is evidence of an intent to trade upon the reputation and good will of Polo.

### Right to Relief Under Section 43(a) of the Lanham Act

14. Defendant's use of the POLO BY RALPH LAUREN and Polo Player Symbol trademarks is a false description or representation of the source of origin of goods in violation of Section 43(a), 15 U.S.C. § 1125(a) and is a separate basis for granting judgment in Polo's favor. *Apollo Distributing Co. v. Apollo Imports, Inc.*, 341 F.Supp. 455, 458 (S.D.N.Y.1972); *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288 (S.D.N.Y.1972).

15. The POLO BY RALPH LAUREN and Polo Player Symbol trademarks are designations of origins which fit precisely within the statutory definition. Confusion must follow if defendant is permitted to use its infringing trademarks, especially on goods which are identical in kind to those of Polo.

### Polo's Right to Relief Under Common Law

16. Polo also prevails on the issue of liability under the common law of unfair competition. *Polo Fashions, Inc. v. Extra Special Products, Inc.*, 451 F.Supp. 555, 563 (S.D.N.Y.1978); *Mortellito v. Nina of California, Inc., supra.*

17. Defendant has infringed The Polo Trademarks in an obvious attempt to establish an association or connection between its goods and the goods of Polo. Such acts constitute palming off, deception of purchasers and misappropriation of the property rights of Polo. All of these acts are actionable under the common law. *Fund of Funds, Ltd. v. First American Fund of Funds, Inc.*, 274 F.Supp. 517 (S.D.N.Y. 1967).

## III. CONCLUSIONS OF LAW—POLO'S RIGHT TO MONETARY RECOVERY

### The Statutory Basis for Polo's Right to a Monetary Recovery

1. Polo is entitled to monetary recovery for Defendant's infringing activities under Section 35 of the Lanham Act, 15 U.S.C. § 1117. Section 35 of the Lanham Act, 15 U.S.C. § 1117, governs the award of monetary relief in cases of trademark infringement and unfair competition, and provides as follows:

(a) When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of Section 29 and 32 and subject to the principles of equity, to recover *(1) defendant's profits, (2) and damages sustained by the plaintiff, and (3) the costs of the action.* The court shall assess such profits and damages or cause the same to be assessed under its direction. *In*

*assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed....* (b) In assessing damages under subsection (a), *the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 32(1)(a) of this Act (15 U.S.C. 1114(1)(a)) ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark* (as defined in section 34(d) of this Act (15 U.S.C. 1116(d)), *in connection with the sale, offering for sale, or distribution of goods or services.* In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of the Internal Revenue Code of 1954, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate. (Emphasis added.)

This section applies to causes of action for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), as well as for infringement of registered trademarks, *e.g., Rickard v. Auto Publisher, Inc.,* 735 F.2d 450 (11th Cir.1984).

2. There are strong public policy considerations for the strict enforcement of trademark laws. These laws exist to protect both the businessman who has striven to develop his goodwill and to protect the consumer against "spurious and falsely marked goods." *Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1075 (S.D.N.Y.1979), *aff'd,* 622 F.2d 577 (2d Cir. 1980).

*Polo Is Entitled To Defendant's Income On The Distribution Or Sale Of The Counterfeit Merchandise*

3. When a defendant is guilty of infringement, an award of profits is appropriate. 15 U.S.C. § 1117; *Lucien Lelong,*

*Inc. v. Dana Perfumes, Inc.,* 138 F.Supp. 575, 578 (N.D.Ill.1955). Particularly, an award of profits is appropriate against a defendant who has exhibited:

[A]n aura of indifference to plaintiff's rights and a smug willingness ... that the good will plaintiff had sought to foster could safely be treated as a nullity.

*W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir.1970). *See also, Maltina Corp. v. Cawy Bottling Co., Inc.,* 613 F.2d 582 (5th Cir.1980); *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena,* 433 F.2d 686 (2d Cir.1970), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

4. Willful and deliberate behavior on the part of an infringing defendant allows the court to fashion the appropriate deterrent remedy. The Ninth Circuit realized in such a situation that an award of nominal damages would merely:

encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication. Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy.

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir.1982).

5. In determining the entitlement to defendant's profits as an element of monetary relief, the plaintiff need not demonstrate any actual damages in order to obtain an accounting for profits. *Playboy Enterprises, Inc. v. P.K. Sorren Export Co., Inc. of Florida,* 546 F.Supp. 987, 997 (S.D.Fla.1982).

6. In view of the nature and circumstances of defendant's sale and distribution of the counterfeit goods, defendant must be charged with actual as well as constructive knowledge of Polo's marks and merchandise. *Vuitton et Fils, S.A. v. Crown Handbags, supra* p. 1076.

It would be impossible for one engaged in the same trade as plaintiff is, and defendant is so engaged, to be unaware of the presence of the counterfeits in the trade. Nor could such a person be un-

aware of the plaintiff's rights to its valued mark. I find that defendant was a wilful violator.

*Id.*

■ 7. Defendant's actions are demonstrative of willful and deliberate behavior. The sales of the counterfeit POLO knit shirts, sweaters and sweatshirts with knowledge that they were not authentic merchandise, shows callous disregard for Polo's Polo Trademarks, reputation and goodwill. Accordingly, Polo is entitled to an award, as damages, of defendant's profits.

8. Polo has demonstrated that defendant has acted in a willful and deliberate manner in selling and distributing the counterfeit POLO shirts, sweaters and sweatshirts.

9. Furthermore, defendant's failure to appear at trial and during pretrial discovery proceedings in maintaining a denial of any sales of POLO garments, in light of the strong evidence to the contrary has frustrated Polo's proof of damages. At trial Polo established a basis for a reasoned conclusion to the extent of the damage caused by the deliberate and willful infringement. Defendant failed to produce evidence to refute Polo's estimates of his sales. It is therefore appropriate for the Court to rely on indirect and less certain methods of proof.

10. Many other courts have been faced with the similar dilemma and have accordingly relied upon circumstantial evidence of the extent of the defendant's wrongdoing. *See, e.g. Deering, Milliken & Co. v. Gilbert,* 269 F.2d 191, 193 (2d Cir.1959); *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966 (2d Cir.1985), *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931) ("[I]t will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."); *Chesa International, Ltd. v. Fashion Associates, Inc.,* 425 F.Supp. 234, 238 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir.1977) ("[W]hen a party frustrates proof of damages, either by withholding facts or through inaccurate recordkeeping, any doubts about the actual assessment of damages will be resolved against that party, and the factfinder may calculate damages at the highest reasonably ascertainable value.")

11. It is reasonable to infer that the retailer checks deposited in County Line Fashions and Tony's Joint Venture bank accounts represent payment for garments bearing the POLO Trademarks. The burden of going forward to show that the checks do not represent such payment was upon the defendant. The burden was met by silence. *Deering, Milliken & Co. v. Gilbert, supra* p. 194.

■ 12. To recover defendant's profits, Section 35 of the Lanham Act, 15 U.S.C. § 1117, requires that Polo show defendant's gross sales of infringing goods. The burden is then on defendant to demonstrate any costs. *Quaker State Oil Refining Corp. v. Kooltone, Inc.,* 649 F.2d 94, 95 (2d Cir.1981); *Playboy Enterprises, Inc. v. P.K. Sorren Export Co., supra* p. 997.

13. It is reasonable to infer that an accurate estimate of the volume of counterfeit POLO knit shirts, sweaters and sweatshirts that Mullins, Dascomb, Gelber[1] and the numerous retailers testified were purchased from the defendant and which defendant refused to concede he dealt in, was represented by the checks deposited in County Line and Tony's Joint Venture account and submitted to defendant as request Exhibits. *Vuitton et Fils, S.A. v. Crown Handbags, supra* p. 1078.

*Polo Is Entitled to An Award of Defendant's Profits As Damages Under the Theory of Unjust Enrichment*

14. Furthermore, Polo is entitled to an award of the defendant's profits on the

---

**1.** Gelber 2,376 garments at $10.00 = $23,760 sales
Mullins 26,640 garments at $11.75 & 16.00 = $331,380 sales

Dascomb 7,500 garments at $11.75 = $88,125 sales

counterfeit POLO garments, since allowing defendant to retain these would constitute unjust enrichment and reward defendant for his illegal acts. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., supra* p. 1274; *Maltina Corp. v. Cawy Bottling Co., supra* at p. 585; *Playboy Enterprises, Inc. v. P.K. Sorren Export Co., supra* p. 997.

15. As the Court of Appeals for the Ninth Circuit has stated, the defendant's profits may be awarded to the plaintiff under an unjust enrichment theory where "the infringement is deliberate and wilful ..." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968).

*Polo Is Entitled To A Trebling of These Damages*

█ 16. In a case of intentional and knowing counterfeiting, as demonstrated in this case, profits are to be trebled in the absence of extenuating circumstances. Defendant offered no evidence of such extenuating circumstances and the court finds none existed. 15 U.S.C. § 1117.

17. The trebling of damages provides an economic deterrence to those who contemplate the otherwise lucrative profession of counterfeiting. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., supra* pp. 1274–75.

*Polo Is Entitled to An Award of Attorneys' Fees and Costs*

█ 18. 15 U.S.C. § 1117 provides that attorneys' fees shall be awarded in an intentional and knowing counterfeiting case in the absence of extenuating circumstances. The defendant offered no evidence of such extenuating circumstances and the court finds none existed.

19. Here, defendant clearly acted with intent and knowledge, mandating the grant of attorneys' fees.

20. The prevailing party is entitled to recover its costs in the bringing of this action. 15 U.S.C. § 1117, Rule 54(d), Federal Rules of Civil Procedure.

IV. RELIEF

21. *Injunctive Relief.* Defendant is guilty of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Accordingly, plaintiff is entitled to a permanent injunction. 15 U.S.C. § 1116.

22. Based upon the evidence before the Court, Polo has established the basis for an award of monetary relief at least in the minimum of the following elements:

23. *Defendants' Profits.* There is conflicting evidence as to the gross revenues of defendant from the sale of counterfeit Polo goods.[2] The court finds that a conservative estimate of the amount of defendant's profits to be awarded as damages to Polo is $225,000 calculated upon the sales revenue of knit shirts, sweaters and sweatshirts bearing the Polo Trademarks.

24. *Treble Damages.* The Court further finds intentional and knowledgeable counterfeiting in the actions of defendant in the distribution or sale of knit shirts, sweaters and sweatshirts undoubtedly sold to unsuspecting customers and that these actions have resulted in damage to Polo. The Lanham Act requires that the amount of defendant's profits be trebled in the amount of $675,000.

25. *Costs.* As the prevailing party, Polo is entitled to recovery of costs in this action and shall submit within 30 days its Bill of Costs for taxation of costs by the clerk.

26. *Attorneys' Fees.* In this, a knowledgeable and intentional violation of the Lanham Act, the Court determines an award of a reasonable attorneys' fees is mandated and the Court directs that Polo submit within 30 days affidavits reciting the work done, the time involved and the amount claimed for such work. If defendant disputes the amount of such fees, defendant may file affidavits in opposition within ten days after receipt of such proof submitted by Polo. The Court will then

---

**2.** Testimony from Gelber, Dascomb and Mullins indicates $443,265 while the deposits to the ac- counts of County Line and Tony's Joint Venture total $249,434.17.

determine the amount of the reasonable attorneys' fees to be awarded.

27. These Findings of Fact and Conclusions of Law are to be considered severally and any finding of fact made which constitutes a conclusion of law is hereby adopted as a conclusion of law and any conclusion of law which constitutes a finding of fact is hereby adopted as a finding of fact.

## V. CONCLUSION

28. The plaintiff is entitled to final judgment incorporating a permanent injunction and to the award of defendant's profits as damages, the trebling thereof, court costs and attorneys' fees as more fully set forth in these Findings of Fact and Conclusions of Law.

### FINAL JUDGMENT

THIS MATTER was tried before the Court on April 29, 1986. The parties were represented by counsel of record and presented evidence, legal authority and argument to the Court, with the evidence being closed on April 29, 1986. The Court having considered the evidence, the legal authority cited and argument of counsel for the parties, the Court concludes, based on the Findings of Fact and Conclusions of Law simultaneously filed herein, that Judgment shall be entered in favor of the Plaintiff.

The Court further finds that the principles of equity are with the Plaintiff and require that a permanent injunction be issued in the above-styled causes inasmuch as the Plaintiff has demonstrated that the Defendant, JAY MILLER, has acted in a deliberate manner with intent to commit an unlawful act without justification or excuse and profited through false representations in selling, distributing, collecting and failing to keep records of the proceeds of garments bearing counterfeit POLO Trademarks; that the Plaintiff has no adequate remedy at law for the loss of good will and reputation which the Defendant's activities have occasioned; that it will continue to suffer irreparable harm if such activities are not enjoined and that the public interest weighs heavily in favor of it. The Court being otherwise fully advised in the premises, it is

ADJUDGED as follows:

1. Defendant, JAY MILLER, and his agents, servants, employees and attorneys, and all persons in active concert and participation with him, be and hereby are permanently restrained and enjoined:

(a) From using the trademarks POLO, RALPH LAUREN, POLO BY RALPH LAUREN, the Polo Player Symbol, or any marks similar thereto in connection with the sale, manufacturing, production or distribution of any unauthorized goods, or the rendering of any unauthorized services, including, without limitation, distributing or delivering any such goods manufactured, ordered or sold prior to the date of this Order;

(b) From manufacturing, distributing, advertising, promoting, holding for sale or selling any goods, labels, tags, logos, decals, emblems, signs, embroidery, and other forms of markings, any packaging, wrappers, containers or receptacles, and any jacquard cards, catalogs, price lists, promotional materials and the like bearing a copy or colorable imitation of Plaintiff's POLO, RALPH LAUREN, POLO BY RALPH LAUREN, or the Polo Player Symbol trademarks;

(c) From using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services, products of Defendants are sponsored by, authorized by, or in any way associated with Plaintiff POLO;

(d) From infringing Plaintiff POLO's registered trademarks;

(e) From otherwise unfairly competing with Plaintiff POLO;

(f) From falsely representing themselves as being connected with Plaintiff POLO or sponsored by or associated with Plaintiff POLO;

(g) From using any reproduction, counterfeit, copy, or colorable imitation of the trademarks POLO, RALPH LAUREN, POLO BY RALPH LAUREN, the Polo

**100**

Player Symbol, or any of the POLO Trademarks in connection with the publicity, promotion, sale, or advertising of goods sold by Defendant including, without limitation, knit shirts or other apparel bearing embroidery or a copy or colorable imitation of Plaintiff POLO's POLO BY RALPH LAUREN or the Polo Player Symbol Trademarks;

(h) From affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including embroidery, words or other symbols tending to falsely describe or represent such goods as being those of Plaintiff POLO and from offering such goods in commerce; and

(i) From using any trademark or trade name in connection with the sale of any goods which may be calculated to falsely represent such goods as being connected with, approved by or sponsored by Plaintiff POLO;

2. The Plaintiff, POLO FASHIONS, INC., shall recover from the Defendant, JAY MILLER, the sum of Six Hundred Seventy-Five Thousand ($675,000.00) Dollars, together with interest at the rate of 5.63% from the date hereof compounded annually, plus attorneys' fees to be determined by the Court upon the submission of affidavits, plus all costs of suit herein to be taxed by the Clerk of the Court upon submission of a Bill of Costs within thirty (30) days of the date hereof; for all of which let execution issue; and

3. The jurisdiction of this Court is retained for purposes of making any further Orders necessary or proper for the construction or modification of this Judgment, the enforcement thereof and the punishment of any violations thereof.