**CLARK–RELIANCE
CORPORATION, Plaintiff,**

v.

**McNAB INCORPORATED, Defendant.**

**No. 89 Civ. 1367(MEL).**

United States District Court,
S.D. New York.

Dec. 21, 1990.

Calfee, Halter & Griswold, Cleveland, Ohio, (Charles B. Lyon, Peter Comodeca, of counsel) Satterlee, Stephens, Burke & Burke, New York City (James McGarry, Mario Aieta, of counsel), for plaintiff.

Wyatt, Gerber, Burke & Badie, New York City (Gerard F. Dunne, of counsel), for defendant.

LASKER, District Judge.

Plaintiff Clark–Reliance Corporation in this suit seeks injunctive, compensatory and punitive relief for alleged unfair competition and infringement of its unregistered trademark, "Jacoby–Tarbox," and all derivatives thereof. Clark–Reliance also seeks an order cancelling defendant McNab, Incorporated's federal registration of the Jacoby–Tarbox mark.

A bench trial as to liability has been completed.

The parties agree that the Jacoby–Tarbox mark and associated derivations (as applied to the former Jacoby–Tarbox International Corporation ["J–T Corp."] product line), including J–T, Jacoby, and Tarbox, have secondary meaning. The Jacoby–Tarbox name has been used at least since the 1940s. It is not descriptive of the line of products it represents. It has been widely associated with J–T Corp.'s product line of

---

devices which allow the monitoring or analysis of fluids travelling through pipes. *Abercrombie and Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976).

These devices include sight flow indicators, liquid level gauges and sight windows, which J–T Corp. marketed for at least forty years, and turbidimeters and smoke detectors, which J–T Corp. marketed for roughly twenty five years. While these devices employ significantly different technology and perform different analytical or monitoring functions, all of them relate to or measure the flow of liquids in pipes, are marketed to similar potential customers, and are used in similar industrial fluid handling facilities.

Until January 17, 1986, this line of devices was manufactured by J–T Corp. On that date, Clark–Reliance and its subsidiary Ja–Tar Acquisition Company purchased all of the assets of J–T Corp. described below. The sale was governed by an "Asset Purchase Agreement," whose paragraph 1.1 provided for the transfer to Ja–Tar of "all of seller's rights to the name 'Jacoby–Tarbox' and 'Jacoby–Tarbox International' and any derivations thereof." Section 1.1 of the Agreement additionally indicated that all of J–T Corp.'s assets other than those indicated in Section 1.2 were transferred to Ja–Tar. The product line acquired by Clark–Reliance represented the vast majority of J–T Corp.'s business and book value.

Section 1.2 provided that J–T Corp. retained the "turbidimeter" product line, but did not provide for its retention of any trademarks or trade names in connection with its retained assets.[1] Henry Tarbox, then President of J–T Corp., testified and the agreement recites that the book value of this line was below $80,000.

The agreement specified that Clark–Reliance was to enjoy exclusive use of the Jacoby–Tarbox name, and that the turbidimeter business retained by J–T Corp. could not continue under its former name.[2] Accordingly, also on January 17, 1986, J–T Corp. filed the necessary documents to change its corporate name to Xobrat Corporation.

At the January 17, 1986 sale, J–T Corp. and Clark–Reliance and Ja–Tar executed an Assignment and Bill of Sale, which sold to Ja–Tar all trademarks, trade names and logos and "all of Jacoby–Tarbox's rights to the name 'Jacoby–Tarbox' 'Jacoby–Tarbox International' and any derivations thereof." Pl.Ex. 132, Tab 3.

As consideration for these assets, Clark–Reliance paid J–T Corp. four million two hundred forty thousand dollars ($4,240,000). This consideration exceeded the book value of J–T Corp. by roughly one and one-half to two million dollars; the credible testimony of both Mr. Tarbox and Harry Figgie, Jr., who negotiated the acquisition for Clark–Reliance, indicated that the reason for the payment of this premium was to secure for Clark–Reliance exclusive rights to use of the Jacoby–Tarbox name and trademarks and other goodwill. Clark–Reliance has continuously used the trademark rights it acquired since the January 1986 transaction.

In light of these uncontroverted facts, Clark–Reliance has demonstrated its ownership of the Jacoby–Tarbox name and trademarks at least as applied to the business it acquired in January 1986.

---

**1.** Paragraph 1.2 provides:

*Assets retained.* Seller is not selling, delivering, transferring, assigning, or conveying, and Buyer is not purchasing, the following assets (collectively, the "Excluded Assets"): (a) Seller's land and buildings; (b) investment in, and receivables due from, Jaeger & Franzman; (c) keyman life insurance policies; (d) so-called Instrument Division assets (or the proceeds from the sale thereof), which assets do not exceed a book value as of October 31, 1985 of Eighty Thousand Dollars ($80,000) and are identified on Schedule 1.2 attached hereto; (e) any assets related to Seller's pension plan; and (f) policies of insurance and any refunds of premiums related thereto.

**2.** Paragraph 1.1 in part provided for the transfer of "all of the Seller's rights to the name 'JACOBY–TARBOX' and 'JACOBY–TARBOX INTERNATIONAL' and any derivations thereof." Paragraph 3.1(f) required J–T Corp. to produce documents satisfactory to Clark–Reliance and "sufficient for filing with the appropriate government official(s) changing the name of Seller to a name not containing the words 'Jacoby–Tarbox' ".

In February or March of 1986, Mr. Tarbox began negotiations with Horace Teass, President of McNab, and/or with Robert Negele, a consultant to McNab who also served on its Board of Directors, concerning the possible sale of Xobrat's turbidimeter business to McNab. Negotiations continued throughout 1986. During the course of these negotiations, Mr. Tarbox made repeated oral and written representations to Mr. Teass that, in light of the January sale of assets and trade names to Clark–Reliance, any sale of Xobrat's turbidimeter business assets could not and would not convey any rights to the use of the Jacoby–Tarbox name or trademarks. Mr. Tarbox's testimony on this point was credible without qualification. It was consistent throughout, it was not challenged on cross examination, and it is supported by numerous documents in the record. These include a memorandum of John Drever, Xobrat's broker, dated March 16, 1986, stating that Mr. Negele represented that "big negative is not able to use JT name" (Pl.Ex. 130); handwritten notations entered by Mr. Tarbox on various documents prepared during negotiations, including the notation "does not include J–T name" added by Mr. Tarbox to a November 13, 1986 letter of intent prepared by McNab (Pl.Ex. 20) and the notation that trademarks were "N/A" on a separate schedule of assets to be transferred (Pl.Ex. 138); and a letter dated May 28, 1986 from Mr. Teass to Harry Figgie, Jr. indicating McNab's desire to establish some variation on the Jacoby–Tarbox name under which McNab could sell the Xobrat turbidimeter line (Pl.Ex. 73). This last document in particular provides evidence of McNab's knowledge that it needed to obtain authorization to use the Jacoby–Tarbox mark.

Despite the massive evidence that the Jacoby–Tarbox name was unavailable to McNab, and that McNab's employees, agents and officers understood this, Mr. Teass nevertheless continued with the acquisition of Xobrat's turbidimeter business. On December 10, 1986, McNab and Xobrat executed an agreement by which McNab acquired substantially all of Xobrat's assets. The closing documents, which were prepared by McNab, contain no provision that the Jacoby–Tarbox name or trademark or any variation of it was among the assets to be transferred. In fact, at the closing Mr. Tarbox and Mr. Teass edited the closing documents, which were prepared by McNab, by striking out a reference to "Patent Records, & Patents, Copy rights, Trademarks" (sic) that had appeared in the asset schedule. Pl.Ex. 28.

The bill of sale prepared in conjunction with the "Asset Purchase Agreement" of December 10, which also was prepared by McNab, identified the business being transferred as "Fluid Analyzers under the name: Jacoby–Tarbox Corporation Fluid Analyzers." Pl.Ex. 28. McNab argues that this reference either suffices to transfer the Jacoby–Tarbox name or creates an ambiguity as to what was being transferred, which (it further argues) establishes that any rights Xobrat may have had to the Jacoby–Tarbox name or trademark have now passed to McNab.

The reference in the Bill of Sale was not effective to transfer any rights in the Jacoby–Tarbox name or trademarks to McNab. Given the absence from the closing documents of any other reference to the Jacoby–Tarbox name being transferred, and given the conscious elimination of references to trademarks from the schedule of assets being transferred, the reference in the Bill of Sale at most serves to create a contractual ambiguity requiring consideration of the parties' intent. It may not even rise to that level; it appears to be merely a convenient general identifying term for the business being transferred.

█ The history of the sale's negotiations, and particularly the credible and uncontested testimony of Mr. Tarbox, establish that whatever ambiguity might appear on the documents' face, in fact the parties had no intention to transfer any rights Xobrat may have had (if any) to the Jacoby–Tarbox name. Mr. Tarbox repeatedly asserted that he had no rights to the name to transfer, and that he was not conveying any such rights in the sale to McNab. Moreover, Mr. Tarbox testified convincingly that the low purchase price of $85,000

paid by McNab reflected the unavailability of the Jacoby–Tarbox name. Mr. Tarbox emphatically indicated that he would have insisted on a substantial premium for the sale of any use of the name, as he had with Clark–Reliance.

Since McNab's acquisition of Xobrat's assets on December 10, 1986, it has continuously marketed the former Xobrat turbidimeter line under the Jacoby–Tarbox name. While McNab does use its own name in conjunction with the Jacoby–Tarbox name, it uses the Jacoby–Tarbox name and trademarks extremely prominently on a wide variety of materials, including its stationery, business forms and labels, trade show booths, and the product itself. McNab does not deny extensive use of the Jacoby–Tarbox name and trademarks, nor does it deny the essential identity of the marks employed by it and by Clark–Reliance. Rather, it contends that it has acquired the legal right to the mark's use in connection with turbidimeter sales.[3]

Although Mr. Teass may have believed that as a matter of law McNab's purchase of Xobrat's turbidimeter business assured it of the right to use the Jacoby–Tarbox name, he knew as a matter of fact that Xobrat and its principal, Mr. Tarbox, refused to sell the name to McNab for any purpose, or to authorize its use by McNab, and that Xobrat and Tarbox represented and insisted that Xobrat had no further ownership in the name or any authority to sell it to McNab or authorize its use by McNab. Accordingly, McNab did not acquire any right to the Jacoby–Tarbox name or trademark from Xobrat.

There is ample evidence of likely and actual consumer confusion engendered by McNab's use of the Jacoby–Tarbox mark. It is not disputed that McNab's turbidimeter products and Clark–Reliance's sight

flow and other Jacoby–Tarbox products are frequently used in conjunction, are always used in similar facilities, and are bought by many common customers. Because the product lines originally had a common source and a prominent position in their field, the existence of two manufacturers selling products under the same name is inherently confusing, and has in fact misled numerous customers seeking Clark–Reliance products.

This confusion is convincingly demonstrated by a request from McNab to Clark–Reliance that McNab serve as a distributor of Clark–Reliance sight flow products bearing the Jacoby–Tarbox trademark. In a letter of July 29, 1988 to Clark–Reliance, McNab's marketing manager stated, "McNab has requests from customers for sight flow indicators and sight glasses. We also recommend flow indicators with our turbidimeters." Pl.Ex. 17. Confusion is further demonstrated by numerous requests from consumers directed to the wrong producer. For example, on May 10, 1988, Engineering America, Inc. addressed a request for quotations on products in fact made by Clark–Reliance to "Jacoby Tarbox Fluid Analyzers, A Unit of McNab Inc." Pl.Ex. 62. This inquiry indicates that even where a consumer was aware of the recent sale of the old Jacoby–Tarbox, the consumer was unable to identify correctly which company produced which product. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2d Cir.1962) (evidence of actual consumer confusion supports finding of likelihood of further confusion). Such confusion will only continue or worsen as long as both McNab and Clark–Reliance use the Jacoby–Tarbox name.[4]

McNab argues that Xobrat continued to use the Jacoby–Tarbox mark after January

---

3. The issue of the willfulness of McNab's infringement is reserved for determination hereafter if necessary.

4. While the evidence of extensive actual confusion should suffice to demonstrate confusion, plaintiffs have also made a strong showing of the factors to be weighed in determining likelihood of confusion as outlined in *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495

(2d Cir.1961). The mark is strong; the mark as used by the parties is essentially identical; the products, while not duplicative, serve closely related functions; Clark–Reliance now indicates that it intends to "bridge the gap" by entering the turbidimeter market, has the capacity to do so, and has made initial plans to manufacture turbidimeters; and there has been actual confusion. 287 F.2d at 495.

17, 1986, that Clark–Reliance had knowledge of this use, and that as a result Clark–Reliance has waived its trademark rights at least as to turbidimeter products. However, no evidence was produced indicating Clark–Reliance's knowledge of any such use, or its acquiescence. Moreover, the record establishes at least partial implementation by Xobrat of its promise to terminate use of the Jacoby–Tarbox name, and Harry Figgie, Jr. and Harry Figgie, III, who is President of Clark–Reliance, both testified credibly that they accepted as true the word of Mr. Tarbox, who told them Xobrat had discontinued use of the mark. Mr. Tarbox testified that he had informed Clark–Reliance that the mark was no longer in use by Xobrat. Whatever actual continued use of the mark by Xobrat, if any, may have occurred, Clark–Reliance did not acquiesce in any such use.

Accordingly, McNab has no right to the continued use of the Jacoby–Tarbox trademark. Its use infringes Clark–Reliance's rights to and enjoyment of that mark.

Clark–Reliance contends that McNab's registration of the Jacoby–Tarbox trademark should be cancelled because (1) McNab did not acquire the right to use the name, and (2) McNab committed fraud on the Trademark Office. Since we find that McNab did not acquire the right to use the name, it is unnecessary to determine whether McNab committed fraud on the Trademark Office.

■ Common law trademark infringement also constitutes unfair competition under New York law. *Markel v. Scovill Mfg. Co.*, 471 F.Supp. 1244, 1253 (W.D.N.Y. 1979); N.Y. General Business Law § 368–d.

This memorandum constitutes the findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P.

Submit proposed decree and judgment on notice.